# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00010-CR

**Wesley Dean DeShon, Appellant**

v.

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BURNET COUNTY, 33RDJUDICIAL DISTRICT
## NO. 9031, HONORABLE FRANK J. MALONEY, JR., JUDGE PRESIDING

Appellant Wesley Dean DeShon was convicted in a jury trial of the felony offense of criminal mischief having caused a pecuniary loss of property of the value of fifteen hundred dollars or more but less than twenty thousand dollars. *See* Tex. Pen. Code Ann. § 28.03(a)(1), (b)(4)(A) (West Supp. 2002). The trial court assessed appellant's punishment at imprisonment in a state jail facility for one year. Imposition of the sentence was suspended and appellant was granted community supervision for a period of five years; the conditions of probation include confinement in the county jail for thirty days and a requirement that appellant make restitution to the owners of the property destroyed in the amount of twenty thousand dollars to be paid over the period of probation in equal monthly installments.

Appellant challenges the legal and factual sufficiency of the evidence; also, he claims that the evidence is insufficient because the testimony of the accomplice witness was not sufficiently corroborated. In addition, appellant complains of: (1) the trial court's refusal to quash the indictment, (2) the admission of evidence relating to the measure of pecuniary loss, (3) the requirement that he make restitution, and (4) the jury charge. We will affirm the judgment.

The application paragraph of the jury charge, tracking the indictment, charged the jury that:

Now bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, Wesley Dean Deshon, on or about the 7th day of September, 1999, in the County of Burnet, and State of Texas, as alleged in the indictment, either acting alone or with another, did then and there intentionally or knowingly destroy tangible property, to wit: TREES

by cutting and bulldozing down trees owned by Richard Scharinger, without the effective consent of Richard Scharinger, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000; or,

by directing that trees owned by Richard Scharinger be cut and bulldozed down, without the effective consent of Richard Scharinger, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000; or,

by instructing Johnny Brown to cut and bulldoze down trees without the effective consent of Richard Scharinger, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000; or,

by paying for trees owned by Richard Scharinger to be cut and bulldozed down, without the effective consent of Richard Scharinger, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000; as alleged in the indictment, you will find the defendant guilty of the offense of criminal mischief as alleged in the indictment, and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will consider the following:

If you find beyond a reasonable doubt that the defendant committed criminal mischief as alleged in the indictment but you fail to find beyond a reasonable doubt that the pecuniary loss, if any, caused was in the amount of $20,000 or more but less than $100,000, but you find beyond a reasonable doubt that the pecuniary loss was in the amount of $1500 or more but less than $20,000, then you will find the defendant guilty of the offense of criminal mischief in said amount and so say by your verdict.

The jury found appellant guilty of the lesser included offense of causing a pecuniary loss of fifteen hundred dollars or more but less than twenty thousand dollars.

### Sufficiency of the Evidence

### A.

In his first point of error, appellant insists that the evidence is legally insufficient to support the jury's verdict for four reasons. First, there is no evidence that anything, other than two dead trees, were destroyed outside of appellant's land and easement. Second, there is no evidence that appellant instructed the destruction of anything other than two dead trees, outside of appellant's

2

land and easement. Third, there is no evidence that the pecuniary loss, if any, suffered by the Scharingers was fifteen hundred dollars or more but less than twenty thousand dollars. Finally, the State failed to prove pecuniary loss based on fair market value or that fair market value could not be established.

In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.—Austin 2000, pet. ref'd). The standard of review is the same whether the evidence is direct or circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All of the evidence that the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994); *see also, Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.—Austin 1997, no pet.).

Richard and Patricia Scharinger owned a 9.62-acre tract of land in the Lake Marble Falls Subdivision in Burnet County. Appellant owned a 4.96-acre tract of land that adjoined the Scharingers' property. Between the two tracts of land was a fifty-foot road easement. An unsurfaced dirt road less than twelve feet wide was located within the half of the easement adjacent to appellant's property. Except for the narrow road, both pieces of property and the easement were covered with native trees and brush. The Scharingers' property was between appellant's property and Lake Marble Falls. On Labor Day 1999, when they came to inspect their property, the Scharingers observed piles of trees and brush and discovered that an area of approximately 30,000 square feet of their land had been cleared without their permission.

Appellant employed Johnny Brown to clear his tract of land and allowed Brown to employ his thirteen-year-old son Timmy, R.V. Turney, and John Wilcox to assist him. Appellant

rented heavy equipment—a track loader—for Brown to use in bulldozing and piling the trees and brush to be burned. There were inconsistencies in Johnny Brown's testimony. He testified that appellant told him to take down two trees that were on the Scharingers' property so that appellant and his wife could "see the lake real good." Brown vacillated in his testimony whether the trees were dead or alive. Brown also testified that, "Before you couldn't see the water, just the very tip of it. When I got done, you could see the lake real good. . . . He [appellant] didn't really say to do this and do that. He said he wanted to see the water."

Timmy Brown testified that appellant showed Johnny Brown where he was going to build his house. Further, Timmy testified that appellant told Johnny Brown that "me [sic] and my wife can't see the lake and so could you go over there and clear some property so I can have a view."

Appellant's wife, Melanie DeShon testified[1] that she was a "Texas Certified Nurseryman Professional," and that she was familiar with the property she and appellant owned and the property the Scharingers' owned. She testified that "originally, before it was cleared, there was a very small portion of the lake" that could be seen from the property she and her husband owned. "We had to climb up into the truck and on top of a tool box to get a very good view of the lake." However, "[a]fter it was cleared, it was just dramatic. You could see a wide expansion, a very large area . . . of the lake." She also testified that the clearing extended at least 250 feet into Scharingers' property—approximately seven times the width of the easement.

Don Gardner, a consulting arborist and a member of the International Society of Arboriculture and the American Society of Consulting Arborists, was qualified and testified as an expert witness. Gardner testified that when he inspected the Scharingers' property, he saw three "sizeable piles" of native trees and observed a "cleared swath . . . right through very nicely wooded areas." By using a "sample plot" method of comparing the cleared area to the undisturbed strips of property on either side of the cleared area, Gardner determined the number, sizes, and kinds of trees

---

[1] Appellant and his wife Melanie were in the process of getting a divorce at the time of trial.

that had been cleared. Gardner testified that the trees destroyed did not have a fair market value, but the replacement value of the trees destroyed was between thirty-five and forty thousand dollars.

Richard Scharinger testified that over one hundred trees on his property had been destroyed. The direct and circumstantial evidence when viewed in the light most favorable to the prosecution supports a rational finding that the essential elements of the charged offense were proved beyond a reasonable doubt. The verdict of the jury, the finder of fact, is supported by legally sufficient evidence. Appellant's first point of error is overruled.

**B.**

In his second point of error, appellant asserts that the evidence is factually insufficient to support the jury's verdict. In a factual sufficiency review, we are required to give deference to the jury's verdict and examine all of the evidence impartially, setting aside the jury verdict "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review is to determine whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

The only evidence offered by the defense was documentary evidence and photographic exhibits of appellant's and the Scharingers' property. Here, as he did in arguing the legal insufficiency of the evidence, appellant argues the State failed to show that trees were destroyed on the Scharingers' property. Appellant relies in part on the testimony of Johnny Brown and R.V. Turney and contends that, other than two dead trees, no trees were destroyed on the Scharingers' property. In our discussion of legal sufficiency, we have already considered the accomplice witness Johnny

5

Brown's testimony, which may be construed to show he bulldozed down more than two dead trees. We will now consider Turney's testimony.

R.V. Turney testified he only saw Johnny Brown knock down two dead trees on the Scharingers' property. However, Turney also testified that on one occasion he saw Johnny Brown "go 200 feet or more" across the right-of-way from appellant's property. Also, "[a]fter [Johnny Brown] went back and got on the track loader, he went well inside of the, what I would call the right-of-way, well into the adjoining property."

The testimony of Jimmy Brown, Melanie DeShon, Don Gardner, and Richard Scharinger was summarized in our discussion of the legal sufficiency; their testimony is sufficient to show that numerous trees outside of the easement were destroyed on the Scharingers' property.

Also, appellant attacks the State's proof of pecuniary loss and insists that the State's proof is woefully deficient. Appellant contends that the State failed to show the fair market value of the trees destroyed or that they had no market value before proving replacement value. Appellant argues that the pecuniary loss should be determined by the difference in the fair market value of the land before and after the trees were destroyed. At trial, the judge disagreed with this argument; we also disagree. It was alleged that the growing trees were destroyed. Don Gardner, the consulting arborist, testified that the trees destroyed had no market value and testified about their replacement value.

After examining all of the evidence impartially and giving deference to the jury's verdict, we conclude that the jury's verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the evidence both for and against the jury's verdict, we find it fails to show that the proof of appellant's guilt is so obviously weak as to undermine confidence in the jury's determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. The evidence is factually sufficient to support the jury's verdict. Appellant's second point of error is overruled.

6

**C.**

In his fourth point of error, appellant urges that the evidence is not "legally sufficient to sustain the conviction when applying the accomplice witness rule." A conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). The trial court charged the jury that Johnny Brown was an accomplice witness as a matter of law.

The test for sufficient corroboration is to eliminate from consideration the testimony of the accomplice witness and then to examine the other inculpatory evidence to ascertain whether the remaining evidence tends to connect the defendant with the offense. *Burks v. State*, 876 S.W.2d 877, 887 (Tex. Crim. App. 1994). The non-accomplice evidence does not have to directly link appellant to the crime nor does it alone have to establish appellant's guilt beyond a reasonable doubt; rather, the non-accomplice evidence merely has to connect appellant to the offense. *Id.*; *Reed v. State*, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). Eliminating Johnny Brown's testimony, we may consider the testimony of Melanie DeShon and Timmy Brown.

On cross-examination, Melanie DeShon testified that she and appellant discussed who should be employed to clear their property but appellant did the hiring and paid for the clearing of the property by check. Appellant proudly showed Melanie how the clearing done on the Scharingers' property greatly enhanced the view of the lake from their property.

Timmy Brown testified:

Q: Did you ever hear Mr. DeShon discussing working across the side, the other side of the Rocky Road in order to effect a view of the lake.

A: Yes, sir.

Q: What, what did you hear him say?

A: Well, he said -- showed my dad where he was going to build the house.

7

And he said, me and my wife can't see the lake and so could you go over there and clear some property so I can have a view.

\* \* \* \* \*

Q: Where were you all standing when you heard him say that?

A: I think it was like in between the driveway of Mr. Dean DeShon's property and where he was going to build the house.

Q: Were you all looking down toward the lake at that point?

A: Yes, sir. We were looking toward the property and towards the lake.

Q: Did you ever hear him say anything else, instructing your dad to bulldoze across the road?

A: No. He just told him go back over there, clear some more property. I don't remember if it was the same day or the following day but he told him he still couldn't, didn't have a clear view, go do some more.

Q: Mr. DeShon said that?

A: Yes, sir.

Q: To who?

A: My dad.

The testimony of Melanie DeShon and Timmy Brown shows appellant was on the scene before the Scharingers' property was cleared and that he instructed Johnny Brown, his employee, to improve the view of the lake from his property. After trees had been cleared from Scharingers' property, appellant took Melanie to their property and expressed his pleasure that his view of the lake had been significantly improved after Scharingers' property had been cleared. The direct and circumstantial evidence furnished by the non-accomplice witnesses tend to connect appellant to the commission of the offense and satisfies the test for corroborating the accomplice witness testimony of Johnny Brown. Appellant's fourth point of error is overruled.

**The Indictment**

In his third point of error, appellant asserts that the trial court erred in denying his motions to quash the indictment.  In the indictment, it is alleged that:

WESLEY DEAN DESHON, hereinafter referred to as Defendant, on or about the 7th day of September, 1999, and before the presentment of this Indictment, in the County of BURNET, and the State of Texas, did then and there intentionally and knowingly damage and destroy tangible property, to wit: TREES,

PARAGRAPH A

by cutting and bulldozing down said trees, without the effective consent of RICHARD SCHARINGER, the owner, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000,

PARAGRAPH B

by directing that the said trees be cut and bulldozed down, without the effective consent of RICHARD SCHARINGER, the owner, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000,

PARAGRAPH C

by instructing Johnny Brown to cut and bulldoze down said trees, without the effective consent of RICHARD SCHARINGER, the owner, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000,

PARAGRAPH D

by paying for said trees to be cut and bulldozed down, without the effective consent of RICHARD SCHARINGER, the owner, and did thereby cause a pecuniary loss in the amount of $20,000 or more but less than $100,000.

Specifically, appellant complains that he was not accorded his Sixth Amendment right to notice of what property he allegedly damaged or destroyed, because the State failed to allege the number, type, size, and location of the trees bulldozed or cut down.

If known, personal property alleged in an indictment shall be identified by name, kind, number and ownership.  When such is unknown, that fact shall be stated, and a general classification, describing and identifying the property as near as may be, shall suffice.  If the property be real estate, its general locality in the county, and the

9

name of the owner, occupant or claimant thereof, shall be a sufficient description of the same.

Tex. Code Crim. Proc. Ann. art. 21.09 (West 1989).

Real property has been defined as "land and anything growing on . . . the land." *Black's Law Dictionary* 1234 (7th ed) 1999; and *see Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (Gonzales, J., concurring).

The trees allegedly bulldozed and cut down were not personal property but were part of the real property on which they were growing. The indictment gave appellant notice that the trees destroyed were on property owned by Richard Scharinger in Burnet County having an alleged value in excess of twenty thousand dollars. We hold that the allegations of the indictment sufficiently described the property destroyed. Appellant was accorded his Sixth Amendment right to notice. Moreover, appellant had additional notice of the description of the property destroyed at a pretrial hearing conducted almost one month before trial. Although the judge hearing the pretrial motion ruled the witness was not qualified as an expert witness, the witness testified to facts giving notice of the location, size, kinds, and the number of trees destroyed. *See Erlandson v. State*, 763 S.W.2d 845, 849-50 (Tex. App.—Houston [14th Dist.] 1988, pet. ref'd).

Also, for the first time on appeal, appellant argues the insufficiency of the indictment would not allow a conviction under this indictment to be raised in bar to another charge with identical allegations. Jeopardy determinations are made by reference to the entire record of the previous proceeding and not simply by reference to the allegations in the indictment. *Stahle v. State*, 970 S.W.2d 682, 693 (Tex. App.—Dallas 1998, pet. re'fd). When one cannot determine from the State's pleadings whether the offenses prosecuted are the same, the court must look to the proof offered at trial. *Ex parte Goodbread*, 967 S.W.2d 859, 860 (Tex. Crim. App. 1998). Appellant's delayed contention that the pleading is insufficient to protect him from future prosecution for the same offense is without merit. *See* 41 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice*

*and Procedure* § 20.213 (2d ed. 2001). The trial court did not err in refusing to quash the indictment. Appellant's third point of error is overruled.

**Measure of Pecuniary Loss**

In his fifth point of error, appellant claims that the trial court erred "in allowing the witness Don Gardner to testify as to a 'cost of cure' measure of damages."

(a) The amount of pecuniary loss under this chapter, if the property is destroyed, is:

   (1) the fair market value of the property at the time and place of the destruction; or

   (2) if the fair market value of the property cannot be ascertained, the cost of replacing property within a reasonable time after the destruction.

Tex. Pen. Code Ann. § 28.06(a) (West 1994). Don Gardner testified that there is "no fair market value in tree appraisal." As explained by Gardner, the "cost of cure" method of determining the value of destroyed trees is essentially the cost of replacement. Simplified, "cost of cure" or replacement value of destroyed trees is the amount of money required to buy trees of the same size and kind, to plant them in place of the destroyed trees, and to care for the trees until they can, without special care, sustain their own growth. Here, in Gardner's opinion, the replacement cost of the destroyed trees was between thirty-five and forty thousand dollars.

Gardner's testimony was not admitted before the jury until the trial court, at the insistence of defense counsel, conducted a "Kelly" hearing out of the presence of the jury. *See Kelly v. State*, 824 S.W.2d 568 (Tex. Crim. App. 1992). The "Kelly" hearing had several purposes. First, the trial court needed to determine whether technical or specialized knowledge would aid the jury in understanding the evidence and in assessing the amount of pecuniary damages, a fact issue for the jury. *See* Tex. R. Evid. 702. Second, the trial court needed to determine whether Gardner was qualified by education, training, experience, and knowledge to give his opinion as an expert on the issue of pecuniary damages. *Id*. Third, the trial court needed to determine whether Gardner's

11

proffered testimony was reliable and relevant on the issue of pecuniary damage. *See id.* Rule 401, 402. Fourth, the trial court needed to determine whether the admission of Gardner's testimony would create a danger of unfair prejudice, confuse the issues, mislead the jury, be cumulative, or cause undue delay. *See id.* Rule 403.

In the "Kelly" hearing, Gardner was interrogated by the State, extensively cross-examined by defense counsel, and carefully questioned by the trial court. There was substantial evidence to support the trial court's finding that Gardner was an expert consulting arborist qualified to testify about the pecuniary loss resulting from the loss of the destroyed trees. Gardner fully explained the generally accepted methodology he used in forming his opinion of the pecuniary damages resulting from the destruction of trees on the Scharingers' property. The evidence supports the trial court's decision to admit Gardner's testimony. On appeal, the trial court's ruling must be upheld unless the trial court abused its discretion. *Kelly*, 824 S.W.2d at 574. We hold the trial court did not abuse its discretion in allowing Gardner to testify about the "cost of cure" measure of damages that is essentially the replacement cost of the trees destroyed.

Appellant argued during trial and now on appeal argues that Gardner's opinion as to the pecuniary damages is absurd because the amount of pecuniary damages Gardner found was about the same amount as that which the Scharingers had paid for the entire property on which the trees were destroyed. This complaint is about the weight of the evidence not about its admissibility. All of the evidence was before the jury for its consideration.[2] Appellant's fifth point of error is overruled.

### Restitution

In his sixth point of error, appellant urges that the trial court abused its discretion in ordering the payment of restitution in the sum of twenty thousand dollars. The criteria for ordering restitution in criminal cases is statutory. *See* Tex. Code Crim. Proc. Ann. art. 42.037 (West Supp.

---

[2] Sometimes as in the repair of automobiles, the sum of the cost of parts is much greater than the entire cost of a new vehicle.

2002). In summary, article 42.037 as applied to this case provides that when a criminal offense results in destruction of a victim's property, a judge sentencing the defendant and granting him community supervision may, as a condition of community supervision, order that the defendant make restitution to the victim in an amount equal to the value of the destroyed property at the time it was destroyed. The court may allow the defendant to make restitution in installments, with the last installment due at the end of the period of community supervision. The court in determining whether to order restitution and the amount of restitution shall consider: (1) the amount of the loss sustained by the victim as a result of the offense, (2) the financial resources of the defendant, (3) the financial needs and earning ability of the defendant and the defendant's dependents, and (4) other factors the court deems appropriate. The court shall impose an order of restitution that is as fair as possible to the victim.

The record reflects that the trial court carefully followed the statutory criteria in ordering restitution. There was evidence of pecuniary loss that varied from one hundred thousand dollars to less than five hundred dollars. The State asked the court to order restitution of ninety thousand dollars. The victims asked for between sixty thousand and one hundred thousand dollars. Appellant insisted that restitution should not exceed two thousand dollars. The court considered the evidence of pecuniary loss shown by the record, considered appellant's financial statement, appellant's earning ability, and his and his dependents' needs in assessing the amount of restitution. The court's order for restitution in the amount of twenty thousand dollars is supported by the record; abuse of discretion is not shown. Appellant's sixth point of error is overruled.

**Court's Jury Charge**

Appellant presents five points of error complaining about the jury charge. Appellant asserts that the trial court erred "in applying the law of parties to the law of parties in its charge to the jury." Appellant argues that the court "in its charge, charged both the law of parties and then by tracking the indictment charged the law of parties again." Also, he argues "such charge allowed the

13

jury to apply the law of parties to the law of parties and allowed the defendant to be convicted twice removed from the offense." The trial court defined the law of parties and then applied the law to the facts. We find no merit in appellant's complaint and overrule point of error eleven.

Appellant complains that the trial court erred "in overruling appellant's objections to the charge for not including a requirement that the appellant acted with a required culpable mental state." The trial court charged the jury that it must find beyond a reasonable doubt that appellant "either acting alone or with another, did then and there intentionally and knowingly destroy tangible property, to wit: TREES." The court's charge properly instructed the jury on the law of culpability required to convict appellant of the charged offense. Appellant's tenth point of error is overruled.

Also, appellant complains the trial court erred in denying him "a requested instruction defining 'fair market value' of tangible property severed from real estate." The facts in this case did not require the submission of the requested charge, and the refusal of the trial court to give the requested charge was not error. Appellant's ninth point of error is overruled.

In his eighth point of error, appellant contends that the court erred in overruling his objection and in failing to submit his requested charge defining "pecuniary loss." Appellant agrees that the trial court's jury charge on the definition of pecuniary loss "tracked the statute. Article 28.06(a)(1) and (2)." The instruction submitted by the court was the statutory definition. The charge was proper and adequate. Appellant's eighth point of error is overruled.

Appellant complains that the trial court erred in overruling his requested instruction defining "easement." The trial court instructed the jury that:

> By the term "easement" is meant that an owner of land adjoining a roadway described in an instrument dedicating that road in a subdivided tract of land as a private way for the exclusive use, benefit, and convenience of the owners of land in such tract, has the right to grade, cut out and use the entire dedicated width of such easement provided that he does not destroy the use and benefit and convenience of such easement by the other owners of such easement, if any.

Appellant argues this instruction did not go far enough. He contends that in addition to "the right to grade, cutout and use the entire dedicated width of the easement" the court should have added "the right to cut and remove trees, brush or other obstacles located within the easement." Appellant is hypercritical of the court's charge which, in defining the rights in the easement, was perhaps more favorable to appellant than he was entitled. Appellant's seventh point of error is overruled.

The judgment is affirmed.

_____

_____ Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally[*]

Affirmed

Filed: February 14, 2002

Do Not Publish

*   Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).