**Ben BYNUM, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 07–84–0220–CR.**

Court of Appeals of Texas,
Amarillo.

April 30, 1986.

Rehearing Denied May 30, 1986.

Michael J. Hinton and Stanley G. Schneider, Law Offices of Stanley G. Schneider, P.C., Houston, George Whittenburg and David Mullin, Whittenburg, Whittenburg & Schachter, John Wheir, Amarillo, for appellant.

Randall L. Sherrod, Criminal Dist. Atty., Canyon, for appellee.

Before DODSON, COUNTISS and BOYD, JJ.

COUNTISS, Justice.

Appellant was convicted by a jury of five counts of misapplication of fiduciary property. Tex. Penal Code Ann. § 32.45 [1] (Vernon 1974). The trial court assessed punishment of ten years in the Texas Department of Corrections, on each count, but granted appellant's request for probation of the penitentiary time. On the first count the court also assessed a $5000 fine that was not probated. In this Court, appellant attacks the judgment of conviction by six grounds of error, contending the evidence is insufficient to prove two of the elements alleged by the State, the indictment is defective in three different ways, and the trial court should have permitted the appellant to inspect the grand jury testimony of one of the State's key witnesses. We affirm.

Appellant was the County Judge of Potter County, Texas. In the fall of 1983, appellant, County Commissioner Pat Cunningham, and various other Potter County officials and citizens formed an organization named Citizens for Progress (CFP), to

---

1. As pertinent here, the statute states:
   (a) For purposes of this section:
   (1) "Fiduciary" includes:
       *    *    *    *    *    *
   (B) any other person acting in a fiduciary capacity, but not a commercial bailee; ...
   (2) "Misapply" means deal with property contrary to:

(A) an agreement under which the fiduciary holds the property; ...
(b) A person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary ... in a manner that involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is held.

assist in the passage of a bond issue for the construction of a Courts Building. This case is based on appellant's handling of various funds donated to CFP.

Each count of the five-count indictment alleges that appellant:

> did then and there intentionally or knowingly, or recklessly misapply by dealing with property, namely: money, of the value of $200.00 or more but less than $10,000.00, [1] *contrary to an agreement* under which the fiduciary, BEN BYNUM, held such property, [2] in a manner that involved *substantial risk of loss* to the Citizens for Progress committee, the person for whose benefit said property was held, by [1] cashing contribution checks donated for the Citizens for Progress committee or [2] by failing to make and keep an account of such property or [3] by failing to deposit and remit for deposit such property in a bank account of the Citizens for Progress committee, ... (Emphasis and numbers added.)

By his first two grounds, appellant argues that the evidence is insufficient to prove the italicized allegations. Because the same law applies to both grounds, we will resolve the grounds together.

When deciding whether the State carried its burden of proof, we apply the standard of review formulated by the United States Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) and adopted by the Texas Court of Criminal Appeals in *Carlsen v. State*, 654 S.W.2d 444, 448 (Tex.Crim.App. 1983). That standard directs us to determine whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The standard is the same, whether we are dealing with direct evidence or circumstantial evidence. 654 S.W.2d at 449.

■ The statute, and the indictment, contain two terms pertinent here that are not defined in the statute: "agreement" and "substantial risk of loss." It is a cardinal rule of statutory construction that when a word is not defined in a statute, the word "employed [is] ordinarily given [its] plain meaning, without regard to the distinction usually made between the construction of penal laws and laws on other subjects, unless the act clearly shows that [it] was used in some other sense." *Campos v. State*, 623 S.W.2d 657, 658 (Tex.Crim.App.1981); *Bush v. State*, 628 S.W.2d 270, 271 (Tex. App.—Amarillo 1982, pet. ref'd). Applying that principle here, the plain meaning of "agreement," from Webster's Third New International Dictionary 43 (1976 ed.) is the act of agreeing or coming to a mutual agreement; a harmonious understanding; or an arrangement (as between two or more parties) as to a course of action. The plain meaning of "substantial," from Webster's Third New International Dictionary 2280 (1976 ed.), is constituting substance; or not seeming or imaginary; or not illusive, but real and true. "Risk," in Webster's Third New International Dictionary 1961 (1976 ed.) is defined as the possibility of loss, injury, disadvantage, or destruction.

Appellant's first argument is that the State alleged, and was required to prove at least one of three agreements:

1. An agreement that appellant would not cash contribution checks donated to the Citizens for Progress Committee.

2. An agreement that appellant would make and keep an account of contribution checks.

3. An agreement that appellant would deposit and remit for deposit all contribution checks into the bank account of the Citizens for Progress Committee.

We note at the outset that we do not agree with appellant's construction of the indictment. The State alleged that appellant misapplied property "contrary to an agreement" under which he held the property. He engaged in that misapplication, said the indictment, by doing one of three different things: (1) cashing contribution checks, or (2) failing to keep an account of contribution checks, or (3) failing to deposit and remit for deposit the checks in the CFP

bank account. Thus, the proper inquiry is whether there is sufficient evidence of an agreement on the manner in which the contribution checks were to be handled and whether appellant violated that agreement in at least one of the three ways alleged by the State.

Reviewing the record, we find testimony from several witnesses that appellant was present at the initial organization meeting of CFP. Those present at the meeting selected a citizen named Gene Gidel to serve as treasurer of CFP, and agreed that all checks and donations would be given to Gidel and that he would pay the bills. Appellant exhibited his knowledge of this agreement by signing and filing a form that designated Gidel as compaign treasurer of CFP and by transmitting to Gidel some but not all, of the checks appellant received. Thus, there was ample evidence from which the jury could conclude that appellant was a party to an agreement, *i.e.*, a harmonious understanding or an arrangement as to a course of action, by which contribution checks were to be delivered to Gidel. Appellant argues that the evidence indicates, at best, only an implied agreement. However, there is ample evidence that those present when Gidel was selected as treasurer expressly agreed on his selection and duties.

Appellant's admitted violation of that agreement, by cashing some of the contribution checks, and other evidence that he cashed contribution checks, instead of delivering them to Gidel, is sufficient to establish acts violative of the agreement. Thus, the State carried its burden of proving an agreement, and the violation by appellant of the agreement.

■ Next, appellant contends the State failed to prove that his actions created substantial risk of loss for CFP. From the record, we find evidence that appellant said "I would have had more than 1,500 dollars" if Commissioner Cunningham and Treasurer Gidel had not been "constantly on me." He also admitted he could not remember what checks he had cashed, and agreed there could be checks for which he had not

accounted. When appellant finally gave the money to Gidel, it was partially in cash ($300), and partially by appellant's personal check ($1600) that he covered by a loan from his parents. There is also evidence that appellant did not keep records of the checks he was cashing and that he determined the amount he owed, at least partially, from information furnished by Commissioner Cunningham. There is also evidence that there has never been an accounting for two checks cashed at a liquor store. From this evidence, the jury was entitled to conclude that the manner in which appellant handled the donated funds created a substantial risk of loss to CFP, *i.e.*, that there was a real possibility of loss. Grounds of error one and two are overruled.

■ In the indictment, the State accuses appellant of misapplying money "of the value of $200.00 or more but less than $10,000.00 ..." (Counts 1–4), and "of the value of less than $200.00" (Count 5). Those allegations create a fatal defect in the indictment, says appellant by his third ground of error, because they do not describe the money and checks that were the subject of each count.

Appellant relies on the general rule that an indictment charging theft of a check must fully describe the check, by date, number, drawer, payee, and amount. *Farabee v. State*, 368 S.W.2d 222 (Tex.Crim. App.1963). If that rule is applicable in this case, his contentions still must be analyzed under the principles stated in the recent case of *Adams v. State*, 707 S.W.2d 900 (Tex.Crim.App.1986), in which the Court of Criminal Appeals, after stating the threshold issue, set forth a three-step process, for deciding whether a charging instrument is fatally defective:

The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question, but only the first step, is to decide whether the charging instrument failed to convey some requisite item of 'notice'. The next step is to decide whether, in the context of the case, this

had an impact on the defendant's ability to prepare a defense, and, finally, how great an impact.

When we apply that analysis, we must conclude that appellant has not demonstrated reversible error.

We will assume, without deciding, that the notice rule from *Farabee* upon which appellant relies is applicable and that the indictment did not contain all of the requisite information. However, approximately three weeks before trial, the State filed with the court and furnished to appellant, copies of the checks upon which the prosecution was to be based. The front and back of each check was reproduced, the date it was cashed was set out, and the count of the indictment to which it was pertinent was stated. Thus, appellant was given, well in advance of trial, the evidence upon which the State would rely for conviction under each count. Consequently, applying *Adams*, we must conclude that any notice deficiency in the indictment was cured by the State's action and had no significant impact on appellant's ability to prepare his defense. Ground of error three is overruled.

■ By ground four, appellant says the indictment is defective because it does not describe the "manner and means" by which he entered into an agreement with CFP for the handling of the contributions. It has long been the rule in Texas that an indictment need not allege evidence. *Castillo v. State*, 689 S.W.2d 443, 448 (Tex.Crim.App. 1985); *Thomas v. State*, 621 S.W.2d 158, 161 (Tex.Crim.App.1981). In considering a motion to quash, the court must determine whether an indictment sets forth in plain and intelligible language sufficient information to enable the accused to prepare his defense. *Beck v. State*, 682 S.W.2d 550, 554 (Tex.Crim.App.1985). The indictment is sufficient, in most cases, if it tracks the language of the statute by stating the elements of the crime and is specific enough to permit a defendant to use a judgment under it as a plea in bar for further prosecution. *See* Tex.Code Crim.Proc.Ann. arts. 21.03, 21.04 (Vernon 1966). Several Texas courts have held that "agreement" and similar terms are essentially evidentiary, *Marrs v. State*, 647 S.W.2d 286, 289 (Tex. Crim.App.1983) and need not be further described. *See Showery v. State*, 678 S.W.2d 103, 108 (Tex.App.—El Paso 1984, pet. ref'd); *Kennard v. State*, 649 S.W.2d 752, 763 (Tex.App.—Fort Worth 1983, pet. ref'd).

In this case, the agreement is a statutory element of the crime and the State must prove its existence. Tex. Penal Code Ann. § 32.45(a)(2)(A) (Vernon 1974). However, the events that created that agreement are evidentiary and, under the foregoing rules, need not be set out in the indictment. The indictment tracks the statute and satisfies the specificity requirements of articles 21.-03 and 21.04 of the Texas Code of Criminal Procedure Annotated (Vernon 1966). Therefore, it is sufficient. Ground of error four is overruled.

■ By ground five, appellant says the indictment is defective because it contains disjunctive pleadings. Specifically, says appellant, the allegation in each count that he cashed contribution checks, "or" failed to keep an account, "or" failed to deposit and remit for deposit the checks, impermissibly pleads disjunctively in each count several methods by which appellant committed an offense.

Appellant's contention might have been sustained prior to 1979. However, in *Hunter v. State*, 576 S.W.2d 395 (Tex.Crim. App.1979) the Court of Criminal Appeals retreated from its excessively technical prohibition against disjunctive pleading. Instead, the Court applied a liberal "notice" test, pointing out that disjunctive pleading is fatal only if it is so vague, uncertain, and indefinite that it fails to give notice of the offense charged. 576 S.W.2d at 399. Although the specific holding of *Hunter* was limited to the issue before it, disjunctive pleading of culpable mental states, it is apparent from the Court's discussion of the problem that it will no longer hold disjunctive pleading to be automatically fatal. We note that four of the cases upon which

appellant relies [2] are discussed by the Court as examples of what it characterizes as "a hyper-technical rule such as might be found in a 19th Century pleading book." *Accord Holcomb v. State,* 597 S.W.2d 373, 374–75 (Tex.Crim.App.1980).

Here, the State plead, disjunctively, three ways in which appellant allegedly misapplied CFP money. Its pleading gave sufficient notice to appellant of the State's intentions and was adequate to allow him to prepare his defense. That is all the law requires. Ground of error five is overruled.

■ By his final ground, appellant contends the trial judge erred by refusing to allow him to inspect Commissioner Cunningham's grand jury testimony. Prior to testifying at trial Cunningham refreshed his memory by reviewing his grand jury testimony. Appellant says access to the grand jury testimony would have allowed him to more adequately cross-examine and impeach Commissioner Cunningham.

Production of grand jury testimony lies within the sound discretion of the trial court and an accused may be permitted to inspect such testimony where a "special reason" exists or where a "particularized need" is shown that outweighs the traditional policy of grand jury secrecy. *McManus v. State,* 591 S.W.2d 505, 523 (Tex.Crim.App.1979); *Mott v. State,* 543 S.W.2d 623, 625–26 (Tex.Crim.App.1976). The defendant must demonstrate an abuse of discretion by the trial court and defendant must also demonstrate harm. *McManus,* 591 S.W.2d at 523.

In this case, appellant makes general references to his desire to inspect the grand jury testimony, to determine whether it was consistent with Commissioner Cunningham's trial testimony and suggests he needed it because Commissioner Cunningham's trial testimony was conflicting and confusing. Neither of those reasons satisfies the "special reason" or "particularized need" test enunciated by the Court of Criminal Appeals. The trial court could have concluded, legitimately, that appellant simply wanted to search the grand jury testimony to see if it contained anything useful.

In any event, we have examined the grand jury testimony and concluded that appellant was not harmed by the trial court's refusal to allow him to inspect it. The inconsistencies are slight and insignificant, and we find nothing in the testimony that would have materially aided appellant. Ground of error six is overruled.

The judgment is affirmed.

### ON MOTION FOR REHEARING

In his motion for rehearing, appellant suggests this Court misstated the facts in disposing of ground of error three, when we said the State furnished appellant copies of the checks upon which the prosecution was to be based. Appellant says he was furnished "only ten of the more than sixteen checks the State relied on for conviction."

Under the record before us, the State introduced eleven campaign contribution checks made payable to CFP and cashed by appellant. Complete copies of ten of those checks were furnished to appellant approximately three weeks before trial, and appellant was told when each was cashed and which count of the indictment each supported. The eleventh check was not designated by the State as supportive of the indictment. From discussion between counsel and the court it is obvious it was admitted as an extraneous offense because it was part of a single continuous transaction that involved five of the designated checks.

The State also introduced CFP checks that were endorsed by the campaign treasurer, Gene Gidel, and elicited testimony that appellant may have cashed two other

---

**2.** Appellant also relies on *Gorman v. State,* 634 S.W.2d 681 (Tex.Crim.App.1982). However, *Gorman* was concerned about the failure of the State to specify in an indictment which of several statutory manners or means of committing a crime the State was going to pursue. That problem is not present here.

CFP checks at a liquor store. It is clear from the record, however, that these items of evidence were offered for ancillary purposes and were not the checks upon which the State was relying to support the indictment. Thus, we are satisfied that we correctly stated the evidence pertinent to the checks upon which the State relied for conviction under each count and we adhere to that statement.

We have carefully examined all other grounds and arguments advanced by appellant in his motion for rehearing but we remain convinced our disposition of the case is correct. Therefore, appellant's motion for rehearing is overruled.