# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

===============

## NO. 03-99-00200-CR

===============

**Douglas Harris Aiken, Appellant**

**v.**

**The State of Texas, Appellee**

========================================================================
### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. CR97-049, HONORABLE JACK H. ROBISON, JUDGE PRESIDING
========================================================================

Appellant Douglas Aiken was convicted in a bench trial of the offense of misapplication of fiduciary property. *See* Tex. Penal Code Ann. § 32.45 (West Supp. 2000). The trial court assessed appellant's punishment at confinement in a State jail facility for two years. Imposition of sentence was suspended and appellant was placed on community supervision for five years. Appellant asserts the evidence is legally and factually insufficient to support his conviction. The judgment will be reversed because the evidence is legally insufficient to support appellant's conviction.

Appellant as agent for Provident Contracting, a corporation, and Robert and Billie Ristau executed a contract agreeing that appellant would build a house for the Ristaus on land that they owned. The Ristaus obtained interim financing for the project from the Texas Commerce Bank of New Braunfels. While building the house, appellant requested several

draws commensurate with the work completed. After appellant's draws were approved by the Ristaus and after the bank's officers made on-site physical inspections and verified the progress of the project, appellant received the funds requested. In accord with the contract, the bank, on behalf of the owners, retained ten percent of the requested draw. The retained funds were for the protection of the owners and for the benefit of subcontractors and materialmen if they were not paid by appellant. Before the house was completed, appellant notified the Ristaus that Provident Contracting was insolvent and that the company would be unable to finish building the house.

We will first consider appellant's points of error in which he insists that the evidence is legally insufficient to support his conviction. In reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the prosecution and ask whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 433 U.S. 307, 319 (1979); *Staley v. State*, 887 S.W.2d 885, 888 (Tex. Crim. App. 1994); *Geesa v. State,* 820 S.W.2d 154, 162 (Tex. Crim. App. 1991); *Martinets v. State,* 884 S.W.2d 185, 187 (Tex. App.—Austin 1994, no pet.).

The State elected to prosecute appellant under Section 32.45 of the Penal Code.[1] *See* Tex. Penal Code Ann. § 32.45 That section provides that a person commits an offense if he intentionally, knowingly, or recklessly misapplies property he holds as a fiduciary in a manner

---

[1] Chapter 162 of the Property Code relates to construction payments and the misapplication of trust funds, defines criminal offenses, and provides penalties applicable. Tex. Prop. Code Ann. §§ 162.001 *et. seq*. (West 1995 & Supp. 2000). However, the Property Code also provides that "[i]f the application of trust funds by a trustee constitutes another offense punishable under the laws of this State, the State may elect the offense for which it will prosecute the trustee." *Id*. § 162.033. (West Supp. 2000) The State elected to prosecute appellant under the provisions of Section 32.45. *See* Tex. Penal Code Ann. § 32.45.

that involves substantial risk of loss to the owner of the property or to the person for whose benefit the property is held. Tex. Penal Code Ann. § 32.45. "Misapply" means to deal with property contrary to an agreement under which the fiduciary holds the property or a law prescribing the disposition of the property. *Id.* (2)(A), (B) (West Supp. 2000).

The State obtained an indictment that was, without objection, amended to allege that on or about May 25, 1995, appellant did "recklessly deal with $1,500 or more but less than $20,000 in United States currency contrary to an agreement under which the fiduciary held such property in a manner that involved substantial risk of loss to Robert Ristau and Billie Ristau, owners of property, by failing to pay subcontractors and/or materialmen pursuant to his contract with the owners".[2] The elements of the alleged offense are that: (1) appellant, (2) recklessly, (3) dealt with property (money), (4) he held as a fiduciary, (5) in a manner that involved substantial risk of loss, (6) to the owners of the property, (7) by failing to pay subcontractors and materialmen, (8) pursuant to his contractual agreement.

On appeal, as he did at the time of trial, appellant insists that the State did not as a matter of law prove the essential element of the offense that appellant dealt with the owners property *in a manner that involved substantial risk of loss*. "Substantial risk of loss" is not defined by statute, but the Court of Criminal of Appeals has defined that element of the offense as a "real possibility," a "positive possibility," or "at least, more likely than not." *See Casillas v. State,* 733 S.W.2d 158, 164 (Tex. Crim. App. 1989); *Bynum v. State,* 767 S.W.2d 769, 774-75 (Tex. Crim.

---

[2] Although Section 32.45 provides protection for both the owners and beneficiaries of fiduciary property, the allegations of this indictment are limited to the alleged loss to the owners. There is no allegation of loss by the subcontractors or materialmen.

App. 1989); *Bynum v. State,* 711 S.W.2d 321, 323 (Tex. App.—Amarillo 1986), *aff'd,* 767 S.W.2d 769 (Tex. Crim. App. 1989).

Appellant argues that the provisions of the Property Code protected the owners to the extent that the owners' liability to subcontractors and materialmen was limited to the amount of the agreed contract obligation. Therefore, there was no "real possibility," in fact no possibility, that the owners would suffer a substantial risk of loss by the appellant's failure to pay subcontractors and materialmen.

The Property Code requires an owner, under an original contract for which a mechanic's lien may be claimed, to retain ten percent of the contract price of the work or ten percent of the value of the work during the progress of the work and for thirty days after the work is completed. Tex. Prop. Code Ann. § 53.101 (West 1995); *Hadnot v. Wenco Distribs.*, 961 S.W.2d 232, 234 (Tex. App.—Houston [1st Dist.] 1997, no writ). The retained funds secure the payment of those who furnish material and labor for any contractor in the performance of the work. Tex. Prop. Code Ann. § 53.102 (West 1995); *Bond v. Kagan-Edelman Enters.,* 985 S.W.2d 253, 260 (Tex. App.—Houston [1st Dist.] 1999, no writ). If the owner retains the funds in compliance with the statute, his liability to subcontractors and materialmen is limited to the ten percent statutory retainage fund. Tex. Prop. Code Ann. § 53.084 (West Supp. 2000); *Hayek v. Western Steel Co.*, 478 S.W.2d 786, 793-94 (Tex. 1972); *Bond*, 985 S.W.2d at 260-61.[3]

---

[3] Although not applicable in this case, the Property Code provides another method for subcontractors and materialmen to perfect liens that has been referred to as the "fund-trapping" method. *See* Tex. Prop. Code Ann. §§ 53.081-53.084. (West 1995 & Supp. 2000); *Bond v. Kagan-Edelman Enters.,* 985 S.W.2d 253, 259-60 (Tex. App.—Houston [1st Dist.] 1999, no pet.); *Hadnot v. Wenco Distris.,* 961 S.W.2d 232, 235 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

In this case, as required by the statute, the contract provided that ten percent of appellant's requested draws would be retained by the Bank to protect the owners from liability to subcontractors and materialmen. The Bank in fact withheld and retained ten percent of appellant's requested draws. The Ristau's closing statement was offered in evidence by the State and admitted by the Court as State's exhibit 6. That statement, as well as trial testimony, shows that at closing four subcontractors and materialmen who claimed they had not been paid, and who had filed liens against the owners' property, were paid out of funds at the closing. "Specification Chem." received $5,000; "Northside Mill Work" received $2,121.25; "Overhead Doors" received $413.45; "Prophit Painting" received $450; the total amount paid to the subcontractors and materialmen at closing was $7,984.70. The closing statement also shows that $12,300 had been retained to pay claims of the subcontractors and materialmen. At the time appellant notified the owners that his company was insolvent and at the time of appellant's last draw, there was $10,120.86 in the fund retained by the Bank.

The money retained in compliance with the contract and the statute belonged to appellant subject to the claims of unpaid subcontractors and materialmen, not to the Ristaus. Ted Cook, the bank officer testified on direct examination by the State.

Q. If the (The subcontractors and materialmen) had in fact been paid, at the end of the contact, who would benefit from that retainage?

A. That would be paid to the contractor.

Q. And not to the home owner?

A. Correct.

5

The four subcontractors and materialmen who had claims at the time of closing were fully paid from the retained funds which belonged to appellant.[4] The State did not prove an essential element of the alleged offense that appellant's failure to pay the subcontractors and materialmen *involved a substantial risk of loss* to the owners. The State failed as a matter of law to prove the offense alleged. When viewed in the light most favorable to the prosecution, a trier of fact could not have rationally found that the evidence proved all of the essential elements of the offense beyond a reasonable doubt.

We reverse the judgment of conviction and render judgment of acquittal. *See Burks v. United States,* 437 U.S. 1 (1978); *Green v. Massey*, 437 U.S. 19 (1978).

_____

_____Carl E. F. Dally, Justice

Justices Jones, Patterson and Dally[*]

Reversed and Rendered

Filed: November 9, 2000

Publish

_____

[4] The State, in its appellate brief, incorrectly argues that: "At closing, the Ristaus spent $7,984.68 to pay off four subcontractors lienholders for work which Appellant had already certified had been paid. At a minimum, the Ristuas suffered a loss of $7,984.68. That is more than a substantial risk of loss; that is a substantial loss. The retainage system set up by the Property Code is designed to protect the property owner and subcontractors from chicanery by the contractor. But that protection is not foolproof and can be circumvented by a contractor who misapplies the monies entrusted to him resulting in a substantial risk of loss to the beneficiary property owner."

* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).