TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-01-00458-CR






Terry Anthony Herron, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT


NO. CR2000-146, HONORABLE JACK H. ROBISON, JUDGE PRESIDING







 Appellant Terry Anthony Herron appeals from his conviction of aggravated robbery. 
See Tex. Pen. Code Ann. § 29.03(a)(2) (West 1994). The trial court assessed appellant's
punishment, enhanced by two prior felony convictions, at imprisonment for fifty years. In three
points of error, appellant challenges the legal and factual sufficiency of the evidence and asserts that
the trial court erred in denying his motion to suppress evidence. The judgment will be affirmed.

 In his first two points of error, appellant insists that "the evidence is at least factually
insufficient, if not legally insufficient, to support a guilty verdict of aggravated robbery." 
Specifically, "[i]t is appellant's position that although the State has proven beyond a reasonable
doubt that an aggravated robbery occurred, the State has failed to prove beyond a reasonable doubt
that appellant committed the robbery."


 In reviewing the legal sufficiency of the evidence, the relevant question is whether,
after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 319 (1979); Patrick v. State, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995);
Aiken v. State, 36 S.W.3d 131, 132 (Tex. App.--Austin 2000, pet. ref'd). The standard of review
is the same whether the evidence is direct, circumstantial, or both. See Kutzner v. State, 994 S.W.2d
180, 184 (Tex. Crim. App. 1999); Banda v. State, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All
of the evidence that the jury was permitted, properly or improperly, to consider must be taken into
account in determining the legal sufficiency of the evidence. Garcia v. State, 919 S.W.2d 370, 378
(Tex. Crim. App. 1994), see also Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993);
Rodriguez v. State, 939 S.W.2d 211, 218 (Tex. App.--Austin 1997, no pet.).

 In a factual sufficiency review, we are required to give deference to the jury's verdict
and examine all of the evidence impartially, setting aside the jury verdict "only if it is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust." Cain v. State, 958
S.W.2d 404, 410 (Tex. Crim. App. 1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App.
1996). The complete and correct standard a reviewing court must follow to conduct a Clewis factual
sufficiency review is to determine whether a neutral review of all of the evidence, both for and
against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine
confidence in the jury's determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

 On November 28, 1999, Irma Rodriguez, a clerk at the RaceTrac, a service station
and convenience store at Interstate Highway 35 and O'Conner Road in San Antonio, started work
at 10:00 p.m. Between 10:00 p.m. and midnight, Johnny Johnson, an African American man who
Rodriguez knew, came into the store and paid for five dollars worth of gas. Johnson was in a tan or
yellow Cadillac. There were two other African American men with Johnson. One of these men put
gas in the Cadillac. (1) Rodriguez testified that it would take between ten and fifteen minutes to drive
from the RaceTrac to the Quix Stop store where the robbery occurred.

 At about 11:00 p.m. that same night, Christella Martinez, the only clerk at the Quix
Stop convenience store on Interstate Highway 35 and Farm to Market Road 1103, was robbed at
gunpoint. A store camera made a video tape of the robbery. The robber was an African American
man wearing a mask without eye holes, a black coat with red arm stripes, and blue jeans. The robber
obtained from two cash registers ten, five, and one dollar bills and coins totaling approximately
$266. Before fleeing from the store, the robber struck Martinez on the head with his handgun,
knocking her to the floor. After the robber left the store, Martinez called 911 and described the
robber as a black male approximately six feet tall, carrying a gun, wearing a black jacket, and blue
jeans. Martinez identified the coat that appellant was wearing when arrested as looking like the coat
the robber wore.

 Laura Garcia, the Quix store manager, left the store only a short time before the
robbery. When she left, she saw a brown or beige colored Cadillac behind the store. A black male
in a long sleeved jacket or shirt and blue jeans was standing near the Cadillac.

 David Anthony, who was employed as a security officer and who was retired from
military service, parked his car in front of the Quix Stop store near the front door about 11:00 p.m. 
As Anthony exited his car, he came face to face with a man about six feet tall coming out of the
store. The man wore a mask and a jacket and had a revolver in his hand. Anthony testified that he
could not determine whether the man "was either light skinned, Negroid, or sort of a darker skinned
Hispanic." Anthony entered the store to see if the clerk was all right. Anthony testified that State's
Exhibit 5, a revolver, looked like the revolver held by the robber. Anthony described the mask as
a "ski mask" but testified it did not have eye holes. Anthony could not remember the color of the
robber's jacket.

 City of Schertz police officer John Reidy was on patrol near the Quix Stop when the
robbery occurred. Reidy heard the police dispatcher directing police units to the scene of the
robbery. Reidy looked in both directions and saw only one vehicle; he decided to "check it out." 
Reidy pursued the vehicle, a tan Cadillac, and activated his overhead lights to initiate a traffic stop. 
The Cadillac stopped. Reidy remained in his patrol car waiting for a back-up officer. Reidy told the
Cadillac driver to "turn the vehicle off and throw the keys out of the window." However, the
Cadillac "took off" and Reidy followed. Lawrence Balderas, a City of Cibolo police officer, came
to assist Reidy. When Balderas passed the Cadillac, the Cadillac began "zig zagging" from the right
shoulder of the road to the left shoulder and then stopped on the left shoulder. Reidy stopped
directly behind the Cadillac. He heard a gunshot and saw a muzzle flash; Reidy drew his weapon
and fired one shot. Reidy saw two African American men jump out of the Cadillac and run into the
brush on opposite sides of the road. Reidy testified that one of the men was "wearing a black jacket
with red stripes and blue jeans." The other man was wearing light colored clothing. The Cadillac
"took off" again. Before the men fled, Reidy heard "something hit the pavement." When the
Cadillac sped away, Reidy saw a handgun on the pavement and picked it up. The handgun was
admitted in evidence as State's Exhibit 5. Testimony in the record shows that, because of
circumstances in the Department of Public Safety Laboratory, if there were fingerprints on the
revolver, they were not identified.

 Balderas turned around and came back to assist Reidy. Balderas heard the gunshots
and saw a black man wearing a black jacket with some red on it and blue jeans run across the road
into the bush. Officer Reidy instructed Balderas to follow the Cadillac. Balderas pursued the
Cadillac and stopped it. Balderas ordered the Cadillac driver out of the car. The driver, the sole
occupant of the Cadillac, was identified as Johnny Johnson. Other officers took custody of Johnson.

 Balderas testified that after he left the scene of Johnson's arrest, he heard a dispatch
"regarding a suspicious black male at the Quix on 3009 . . . . And I offered my assistance because
I was right there . . . . That's the Quix at Borgfield and 3009." Balderas entered the Quix
convenience store parking lot; he saw "a subject standing . . . by the dumpster . . . as soon as I came
around the corner he dodged behind that fence." Balderas, with his gun drawn, ordered the man to
step out from behind the fence and to get down on the ground. Officers Reidy and Ronnie Ristow
soon arrived where Balderas had the man on the ground. The African American man had fresh
scratches on his face and his clothes were torn. He was wearing a black reversible coat and when
reversed, it was black with red arm stripes. The man was later identified as Terry Herron, the
appellant. The officers found ten, five, and one dollar bills and change in appellant's pockets in the
sum of $190.95. Appellant's fingerprints were found on the right rear passenger window of the
Cadillac that Johnson was driving when arrested. Masks of the type worn by the robber were found
in the Cadillac. 

 The direct and circumstantial evidence when viewed in the light most favorable to
the prosecution supports a rational finding that the essential elements of the charged offense were
proved beyond a reasonable doubt. The verdict of the jury, the finder of fact, is supported by legally
sufficient evidence. Appellant's first point of error is overruled.

 After examining all of the evidence impartially and giving deference to the jury's
verdict, we conclude that the jury's verdict is not so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the evidence
both for and against the jury's verdict, we find it fails to show that the proof of appellant's guilt is
so obviously weak as to undermine confidence in the jury's determination, or that the proof of guilt,
although adequate if taken alone, is greatly outweighed by the contrary proof. The evidence is
factually sufficient to support the jury's verdict. Appellant's second point of error is overruled.

 In his third point of error, appellant complains that the trial court erred in denying his
motion to suppress evidence. The record does not include a motion to suppress evidence. There is
no record of a pretrial hearing on a motion to suppress evidence. More importantly, appellant's brief
does not designate any specific evidence that he claims should have been suppressed. In his brief,
appellant urges that "any evidence obtained as a result of the stop should be suppressed." Because
appellant has failed to specify what evidence should have been suppressed, nothing is presented for
review. See Williams v. State, 937 S.W.2d 478, 488 (Tex. Crim. App. 1996); Massey v. State, 933
S.W.2d 141, 148 (Tex. Crim. App. 1996); Lawton v. State, 913 S.W.2d 542, 544 (Tex. Crim. App.
1995).

 Appellant's only reference to the record is "[T]he testimony regarding appellant's
'detention' is located in volume 5, page 47-page 99." Mere reference to record pages does not
sufficiently identify the court's actions complained of in an appellate brief. Thiel v. State, 676
S.W.2d 593, 595 (Tex. Crim. App. 1984); Elam v. State, 841 S.W.2d 937, 940 (Tex. App.--Austin
1992, no pet.). Although inadequately briefed, we have nevertheless examined the designated
portion of the record. During trial, out of the presence of the jury, the trial court heard testimony,
including appellant's testimony. Thereafter, counsel objected: "We want suppressed any statements
made by the defendant that day, November 29th, 1999, . . . during the time he was held by the
officer." The trial court asked appellant's counsel if that was all he wanted suppressed. Counsel
responded: "That's all that happened, yes." The court overruled appellant's objection. Our review
of the record reveals no evidence that appellant made any incriminating statements. (2) However, we
note that appellant did not object to the admission of evidence about the money he had in his pocket
or about the coat he was wearing when he was arrested. Appellant's third point of error is overruled.

 The judgment is affirmed.



 

 Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally*

Affirmed

Filed: June 6, 2002

Do Not Publish
























* Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1.   In reviewing the record, it is unclear whether Rodriguez identified the man who put the gas
in the Cadillac as appellant.
2.   During the hearing appellant testified: "I knew I had a right to that [his Miranda warning].
I choose not to talk to them. That's why I didn't--I didn't tell them nothing but my name. And
when he asked me another question, I told him, "Am I under arrest?" He said, "Yeah, you're under
arrest." I said, "Well I don't want to talk to you without an attorney."