# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00458-CR

**Terry Anthony Herron, Appellant**

**v.**

**The State of Texas, Appellee**

---

**FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. CR2000-146, HONORABLE JACK H. ROBISON, JUDGE PRESIDING**

---

Appellant Terry Anthony Herron appeals from his conviction of aggravated robbery. *See* Tex. Pen. Code Ann. ' 29.03(a)(2) (West 1994). The trial court assessed appellant=s punishment, enhanced by two prior felony convictions, at imprisonment for fifty years. In three points of error, appellant challenges the legal and factual sufficiency of the evidence and asserts that the trial court erred in denying his motion to suppress evidence. The judgment will be affirmed.

In his first two points of error, appellant insists that Athe evidence is at least factually insufficient, if not legally insufficient, to support a guilty verdict of aggravated robbery.@ Specifically, A[i]t is appellant=s position that although the State has proven beyond a reasonable doubt that an aggravated robbery occurred, the State has failed to prove beyond a reasonable doubt that appellant committed the robbery.@

In reviewing the legal sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Patrick v. State*, 906 S.W.2d 481, 486 (Tex. Crim. App. 1995); *Aiken v. State*, 36 S.W.3d 131, 132 (Tex. App.CAustin 2000, pet. ref=d). The standard of review is the same whether the evidence is direct, circumstantial, or both. *See Kutzner v. State*, 994 S.W.2d 180, 184 (Tex. Crim. App. 1999); *Banda v. State*, 890 S.W.2d 42, 50 (Tex. Crim. App. 1994). All of the evidence that the jury was permitted, properly or improperly, to consider must be taken into account in determining the legal sufficiency of the evidence. *Garcia v. State*, 919 S.W.2d 370, 378 (Tex. Crim. App. 1994), *see also Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); *Rodriguez v. State*, 939 S.W.2d 211, 218 (Tex. App.CAustin 1997, no pet.).

In a factual sufficiency review, we are required to give deference to the jury=s verdict and examine all of the evidence impartially, setting aside the jury verdict Aonly if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.@ *Cain v. State*, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). The complete and correct standard a reviewing court must follow to conduct a *Clewis* factual sufficiency review is to determine whether a neutral review of all of the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury=s determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000).

On November 28, 1999, Irma Rodriguez, a clerk at the RaceTrac, a service station and convenience store at Interstate Highway 35 and O=Conner Road in San Antonio, started work at 10:00 p.m. Between 10:00 p.m. and midnight, Johnny Johnson, an African American man who Rodriguez knew, came into the store and paid for five dollars worth of gas. Johnson was in a tan or yellow Cadillac. There were two other African American men with Johnson. One of these men put gas in the Cadillac.[1] Rodriguez testified that it would take between ten and fifteen minutes to drive from the RaceTrac to the Quix Stop store where the robbery occurred.

At about 11:00 p.m. that same night, Christella Martinez, the only clerk at the Quix Stop convenience store on Interstate Highway 35 and Farm to Market Road 1103, was robbed at gunpoint. A store camera made a video tape of the robbery. The robber was an African American man wearing a mask without eye holes, a black coat with red arm stripes, and blue jeans. The robber obtained from two cash registers ten, five, and one dollar bills and coins totaling approximately $266. Before fleeing from the store, the robber struck Martinez on the head with his handgun, knocking her to the floor. After the robber left the store, Martinez called 911 and described the robber as a black male approximately six feet tall, carrying a gun, wearing a black jacket, and blue jeans. Martinez identified the coat that appellant was wearing when arrested as looking like the coat the robber wore.

---

[1] In reviewing the record, it is unclear whether Rodriguez identified the man who put the gas in the Cadillac as appellant.

Laura Garcia, the Quix store manager, left the store only a short time before the robbery. When she left, she saw a brown or beige colored Cadillac behind the store. A black male in a long sleeved jacket or shirt and blue jeans was standing near the Cadillac.

David Anthony, who was employed as a security officer and who was retired from military service, parked his car in front of the Quix Stop store near the front door about 11:00 p.m. As Anthony exited his car, he came face to face with a man about six feet tall coming out of the store. The man wore a mask and a jacket and had a revolver in his hand. Anthony testified that he could not determine whether the man Awas either light skinned, Negroid, or sort of a darker skinned Hispanic.@ Anthony entered the store to see if the clerk was all right. Anthony testified that State=s Exhibit 5, a revolver, looked like the revolver held by the robber. Anthony described the mask as a Aski mask@ but testified it did not have eye holes. Anthony could not remember the color of the robber=s jacket.

City of Schertz police officer John Reidy was on patrol near the Quix Stop when the robbery occurred. Reidy heard the police dispatcher directing police units to the scene of the robbery. Reidy looked in both directions and saw only one vehicle; he decided to Acheck it out.@ Reidy pursued the vehicle, a tan Cadillac, and activated his overhead lights to initiate a traffic stop. The Cadillac stopped. Reidy remained in his patrol car waiting for a back-up officer. Reidy told the Cadillac driver to Aturn the vehicle off and throw the keys out of the window.@ However, the Cadillac Atook off@ and Reidy followed. Lawrence Balderas, a City of Cibolo police officer, came to assist Reidy. When Balderas passed the Cadillac, the Cadillac began Azig zagging@ from the right shoulder of the road to the left shoulder and then stopped on the left shoulder. Reidy stopped directly behind the Cadillac. He heard a gunshot and saw a

**4**

muzzle flash; Reidy drew his weapon and fired one shot. Reidy saw two African American men jump out of the Cadillac and run into the brush on opposite sides of the road. Reidy testified that one of the men was Awearing a black jacket with red stripes and blue jeans.@ The other man was wearing light colored clothing. The Cadillac Atook off@ again. Before the men fled, Reidy heard Asomething hit the pavement.@ When the Cadillac sped away, Reidy saw a handgun on the pavement and picked it up. The handgun was admitted in evidence as State=s Exhibit 5. Testimony in the record shows that, because of circumstances in the Department of Public Safety Laboratory, if there were fingerprints on the revolver, they were not identified.

Balderas turned around and came back to assist Reidy. Balderas heard the gunshots and saw a black man wearing a black jacket with some red on it and blue jeans run across the road into the bush. Officer Reidy instructed Balderas to follow the Cadillac. Balderas pursued the Cadillac and stopped it. Balderas ordered the Cadillac driver out of the car. The driver, the sole occupant of the Cadillac, was identified as Johnny Johnson. Other officers took custody of Johnson.

Balderas testified that after he left the scene of Johnson=s arrest, he heard a dispatch Aregarding a suspicious black male at the Quix on 3009 . . . . And I offered my assistance because I was right there . . . . That=s the Quix at Borgfield and 3009.@ Balderas entered the Quix convenience store parking lot; he saw Aa subject standing . . . by the dumpster . . . as soon as I came around the corner he dodged behind that fence.@ Balderas, with his gun drawn, ordered the man to step out from behind the fence and to get down on the ground. Officers Reidy and Ronnie Ristow soon arrived where Balderas had the man on the ground. The African American man had fresh scratches on his face and his clothes were torn. He was wearing a black reversible coat and when reversed, it was black with red arm stripes. The

**5**

man was later identified as Terry Herron, the appellant. The officers found ten, five, and one dollar bills and change in appellant=s pockets in the sum of $190.95. Appellant=s fingerprints were found on the right rear passenger window of the Cadillac that Johnson was driving when arrested. Masks of the type worn by the robber were found in the Cadillac.

The direct and circumstantial evidence when viewed in the light most favorable to the prosecution supports a rational finding that the essential elements of the charged offense were proved beyond a reasonable doubt. The verdict of the jury, the finder of fact, is supported by legally sufficient evidence. Appellant=s first point of error is overruled.

After examining all of the evidence impartially and giving deference to the jury=s verdict, we conclude that the jury=s verdict is not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Moreover, from our neutral review of all of the evidence both for and against the jury=s verdict, we find it fails to show that the proof of appellant=s guilt is so obviously weak as to undermine confidence in the jury=s determination, or that the proof of guilt, although adequate if taken alone, is greatly outweighed by the contrary proof. The evidence is factually sufficient to support the jury=s verdict. Appellant=s second point of error is overruled.

In his third point of error, appellant complains that the trial court erred in denying his motion to suppress evidence. The record does not include a motion to suppress evidence. There is no record of a pretrial hearing on a motion to suppress evidence. More importantly, appellant=s brief does not designate any specific evidence that he claims should have been suppressed. In his brief, appellant urges that Aany evidence obtained as a result of the stop should be suppressed.@ Because appellant has failed to specify

**6**

what evidence should have been suppressed, nothing is presented for review. *See Williams v. State*, 937 S.W.2d 478, 488 (Tex. Crim. App. 1996); *Massey v. State*, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); *Lawton v. State*, 913 S.W.2d 542, 544 (Tex. Crim. App. 1995).

Appellant=s only reference to the record is A[T]he testimony regarding appellant=s ×detention= is located in volume 5, page 47-page 99.@ Mere reference to record pages does not sufficiently identify the court=s actions complained of in an appellate brief. *Thiel v. State*, 676 S.W.2d 593, 595 (Tex. Crim. App. 1984); *Elam v. State*, 841 S.W.2d 937, 940 (Tex. App.CAustin 1992, no pet.). Although inadequately briefed, we have nevertheless examined the designated portion of the record. During trial, out of the presence of the jury, the trial court heard testimony, including appellant=s testimony. Thereafter, counsel objected: AWe want suppressed any statements made by the defendant that day, November 29th, 1999, . . . . during the time he was held by the officer.@ The trial court asked appellant=s counsel if that was all he wanted suppressed. Counsel responded: AThat=s all that happened, yes.@ The court overruled appellant=s objection. Our review of the record reveals no evidence that appellant made any incriminating statements.[2] However, we note that appellant did not object to the admission of evidence about the money he had in his

---

[2] During the hearing appellant testified: AI knew I had a right to that [his Miranda warning]. I choose not to talk to them. That=s why I didn=tCI didn=t tell them nothing but my name. And when he asked me another question, I told him, AAm I under arrest?@ He said, AYeah, you=re under arrest.@ I said, AWell I don=t want to talk to you without an attorney.@

pocket or about the coat he was wearing when he was arrested.  Appellant=s third point of error is overruled.

The judgment is affirmed.

Carl E. F. Dally, Justice

Before Justices Kidd, Puryear and Dally[*]

Affirmed

Filed:   June 6, 2002

Do Not Publish

*    Before Carl E. F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment.  *See* Tex. Gov=t Code Ann. ' 74.003(b) (West 1998).