NUMBERS 13-02-265-CR and 13-02-266-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI - EDINBURG 

 


JEFFREY ALLEN KEIRN, Appellant,



v.




THE STATE OF TEXAS, Appellee.

 

On appeal from the 105th District Court of Nueces County, Texas.

 


O P I N I O N


Before Justices Hinojosa, Yañez, and Baird (1)

 

Opinion by Justice Baird


 Appellant was charged in two separate indictments with the offense of misapplication of fiduciary property. 
The cases were jointly tried. A jury convicted appellant of each offense, and the trial judge assessed
punishment at ten years confinement in the Texas Department of Criminal Justice--Institutional Division. In a
single point of error, appellant contends the evidence is insufficient to support the jury's verdict. We affirm the
judgment of the trial court.

I. Standard of Appellate Review.

 Legal sufficiency is the constitutional minimum required by the Due Process Clause of the Fourteenth
Amendment to sustain a criminal conviction. Jackson v. Virginia, 443 U.S. 307, 315-16 (1979). The
appellate standard for reviewing a legal sufficiency challenge is whether any rational trier of fact could have
found the essential elements of the offense beyond a reasonable doubt. Id. at 320. The evidence is examined
in the light most favorable to the fact-finder. Id. Sufficiency of the evidence is measured by the hypothetically
correct jury charge which accurately sets out the law, is authorized by the indictment, and does not
unnecessarily increase the State's burden of proof. Malik v. State, 953 S.W.2d 234, 240 (Tex. Crim.
App.1997); Cano v. State, 3 S.W.3d 99, 105 (Tex. App.-Corpus Christi 1999, pet. ref'd). A successful legal
sufficiency challenge will result in the rendition of an acquittal by the reviewing court. Tibbs v. Florida, 457
U.S. 31, 41- 42 (1982). The jury, as the sole judge of the credibility of the witnesses and the weight to be
given their testimony, is free to accept or reject all or any part of the testimony of any witness. Tex. Code
Crim. Proc. Ann. art. 38.04 (Vernon 1981); Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim. App.1986). 
Contradictions or conflicts between the witnesses' testimony do not destroy the sufficiency of the evidence;
rather, they relate to the weight of the evidence, and the credibility the jury assigns to the witnesses. 
Weisinger v. State,775 S.W.2d 424, 429 (Tex. App.-Houston [14th Dist.] 1989, pet. ref'd). A reviewing court
may not substitute its conclusions for that of the jury, nor may it interfere with the jury's resolution of conflicts
in the evidence. Heiselbetz v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

II. The Allegations.

 A person commits the offense of misapplication of fiduciary property if he "intentionally, knowingly, or
recklessly misapplies property he holds as a fiduciary or property of a financial institution in a manner that
involves substantial risk of loss to the owner of the property or to a person for whose benefit the property is
held." Tex. Pen. Code Ann. § 32.45(b) (Vernon 2003). The instant indictments alleged, in pertinent part, that
appellant intentionally, knowingly, and recklessly misapplied property, namely money, in an amount greater
than $20,000 but less than $100,000, he held as a fiduciary in a manner that involved substantial risk of loss to
James Lucas and Jim Magee, the owners of the property. (2) The charge authorized the jury to convict if it
found, in pertinent part, that appellant intentionally or knowingly or recklessly misapplied property, namely:
money in an amount greater than $20,000 but less than $100,000, that appellant held as a fiduciary in a
manner that involved a substantial risk of loss to Lucas and Magee, the owners of the property. (3) 

III. Factual Summary.


 This case involves investments made by Lucas and Magee in two entities: DDH, a handbag company; and,
DDG, a hair care company. For clarity, we will refer to DDH as "H" and DDG as "G." The State's evidence
consisted of three primary witnesses, Lucas, Magee, and their attorney, Sam Millsap. Appellant did not offer
any evidence, but instead rested behind the State. Viewed in the light most favorable to the jury's verdict, the
record evidence establishes the following.

 Around Memorial Day in 1999, appellant approached Lucas about investing in "H." Lucas invested $62,500
for the development and promotion of the handbags produced by "H." This investment represented a 3%
interest in "H." Lucas testified this investment represented "a very significant percent" of his personal assets. 
Lucas's check was deposited in "H's" bank account. In April and May of 2000, Lucas received faxes from
appellant that "H" had made a profit of $398,116. However, Lucas later learned that "H" was, in fact, defunct
when these faxes were transmitted. 

 Later in 1999, Lucas met with a friend, Denie Sach, who owned a hair care company. Sach was looking for
management expertise and capitalization for her company. Lucas suggested that Sach discuss these needs with
appellant. The two met and decided to form a new company, "G," and asked Lucas to invest in this company. 
In October of 1999, Lucas invested $35,000, which represented a 25 percent ownership interest in "G." (4)
Even though appellant was to serve as president of "G," the two companies were unrelated. Specifically,
Lucas testified his investment in "G" was in no way related to "H." The day appellant received Lucas's
$35,000 check, appellant deposited the check and immediately transferred a portion of the funds to "H." (5) 

 In the early 1980s, Magee built a custom home for appellant, and maintained social contact in the subsequent
years. At a social function in 1999, appellant told Magee about "H," and later delivered financial statements
related to that company for Magee to review when considering whether to invest. Eventually, Magee invested
$212,500 in "H." This represented a 10 percent ownership interest. 

 Later in 1999, appellant approached Magee about investing in "G." Magee agreed to invest $35,000 which
represented a 25 percent interest in "G." According to Magee, "G" and "H" were to be totally separate
entities, the investment was to capitalize "G," and the investment was not to be used for "H" in any way. 
Magee testified that appellant deposited the $35,000 check, and subsequently transferred a portion of the
funds to "H." (6) 

 Eventually, appellant filed for bankruptcy and listed Magee and Lucas as creditors. Magee and Lucas retained
an attorney, Sam Millsap, in connection with the bankruptcy. Millsap took appellant's deposition, and the
State offered that testimony and certain exhibits into evidence. Millsap testified there was no connection
between "H" and "G" other than that appellant, Lucas, and Magee were associated with the two entities. 
During his testimony, appellant admitted he diverted the funds from "G" to pay "H's" operating expenses. 
Appellant also admitted that he never told Lucas and Magee that the funds were being diverted to "H." Those
funds were never returned to "G." "H" ceased to operate in 2000. 

IV. Argument and Analysis.

 Appellant argues the evidence is insufficient to prove the "substantial risk of loss" element of section
32.45(b). Specifically, appellant argues: 

 There could not be a substantial risk of loss to Magee or Lucas because the money was used for their benefit.
The money benefitted Magee and Lucas as owners of ["H"], even if it did not benefit ["G"]. Since the money
was used for their benefit the State failed to prove an essential element of the offense, namely, that there was a
substantial risk of loss to them as the owner.



In support of this argument appellant relies upon two cases: Smith v. State, 752 S.W.2d 121 (Tex. App.-Tyler
1986, pet. ref'd), and Aiken v. State, 36 S.W.3d 131 (Tex. App.-Austin 2000, no pet.).

 In Smith, supra, the defendant was a trustee who testified that he withdrew money from a trust in violation of
the trust agreement, but the money was nevertheless used for the benefit of the beneficiary. Smith, 752
S.W.2d at 125. The court of appeals held that this testimony, if believed, would have entitled the defendant to
an acquittal, and that the trial court erred by refusing to so instruct the jury. Id. The court reasoned that even
if the withdrawals violated the trust agreement, there was no risk of loss if the beneficiary received the use and
benefit of the funds. Id. at 124.

 We find Smith distinguishable in two respects. First, that case did not involve a sufficiency challenge (which
is the sole issue presented here), but rather jury charge error. See id. at 125. Secondly, in Smith, money was
used for the same beneficiary. Id. However, in the instant case, the money was diverted from its intended
beneficiary, "G," and utilized to benefit an unrelated company, "H."

 In Aiken, the defendant executed a contract agreeing to build a house for a couple. Aiken, 36 S.W.3d at 132. 
Before the project was completed, the defendant informed the couple that the company was insolvent, and that
he would be unable to finish building the house. Id. The defendant was accused of failing to pay
subcontractors and materialmen pursuant to his contract with the couple. Id. He was convicted of the offense
of misapplication of fiduciary property and brought appeal claiming the evidence was legally insufficient to
support his conviction. Id. at 131. Specifically, he argued the evidence failed to prove he dealt with the
couple's property in a manner that involved a substantial risk of loss. A portion of the funds were retained by
the defendant in compliance with the property code. Id. at 133. The money, which belonged to the defendant
subject to the claims of the unpaid subcontractors and materialmen, was eventually used to pay fully the
subcontractor and materialmen's claims. Id. at 134. The Aiken Court agreed the evidence failed to show that
there had been a substantial risk of loss to the owners. Id. The conviction was reversed. Id.

 We also find Aiken distinguishable. Importantly, in Aiken, the money was used for the same beneficiary,
namely, the couple for whom the defendant was building the house. However, in the instant case, the money
was diverted from its intended beneficiary, "G," and utilized to benefit "H." Additionally, the funds in Aiken
were held in reserve and earmarked for the subcontractors and materialmen who worked to build the home. 
In the instant case, the money contributed was not held in reserve or earmarked for "G," but rather
immediately diverted to pay "H's" operating expenses.

 A substantial risk of loss, within the meaning of section 32.45(b), is one "that exists but does not rise to the
level of a substantial certainty. It need not have to be 'unlikely' that the property will be recovered, but the risk
of loss does have to be a positive possibility . . . the risk must be, at least, more likely than not." Casillas v.
State, 733 S.W.2d 158, 164 (Tex. Crim. App. 1986). In the instant case, the issue is whether the conduct of
appellant, namely, diverting the funds from "G" to "H," presented a real and positive possibility of loss of
those funds. Bynum v. State, 711 S.W.2d 321, 324 (Tex. App.-Amarillo 1986), aff'd,767 S.W.2d 769 (Tex.
Crim. App. 1989).

 We find Dwyer v. State, 836 S.W.2d 700 (Tex.App.--El Paso 1992, pet. ref'd), persuasive in our resolution of
the instant case. In Dwyer, the defendant knew of severe cash shortages, yet he continued to accept payments,
and applied such payments to satisfy other financial obligations. Id. at 701. Specifically, the defendant applied
funds earmarked for utilities to overhead expenses, rather than to the consumer's utility account. Id. This
evidence was sufficient to prove the defendant misapplied the property he held in a manner that involved
substantial risk of loss to the owner of the property. Id. at 702.

 The same is true in the instant case. Appellant knew "H" was suffering severe financial shortages, but failed
to disclose this fact to Magee and Lucas. Appellant convinced Magee and Lucas to invest in "G." During
these discussions, appellant did not mention the poor financial health of "H." When Magee and Lucas
contributed the funds to capitalize "G," they did not agree that those funds could be diverted from "G" to pay
the operating expenses of "H." Giving appellant the benefit of the doubt that he wanted to eventually return
those funds to "G," the fact remains that the unauthorized diversion of those funds presented a real and
positive possibility of loss of those funds. Bynum, 711 S.W.2d at 321. Indeed, appellant admitted in his
deposition related to his bankruptcy that the funds were never repaid to "G." Therefore, it is self evident that
there was a substantial risk of loss to Magee and Lucas.

 In response to appellant's precise argument, we hold the fact that Lucas and Magee had ownership interests in
"H" is wholly irrelevant. Section 32.45(b) does not permit a defendant to escape criminal liability if the
investors had financial interests in both businesses. Rather, the issue is whether the funds were used for the
particular business to which they were contributed. In the instant case, $62,000 of the funds contributed by
Magee and Lucas for the capitalization of "G" were not used for "G." Instead, those funds were diverted by
appellant and used for "H." The fact that Magee and Lucas had invested in "H" did not authorize appellant to
use the "G" funds to benefit "H." The testimony is undisputed that "H" and "G" were totally separate and
unrelated entities.

 For these reasons, we hold the record evidence was sufficient for the jury to have found the essential element
of "substantial risk of loss" of section 32.45(b). (7) Jackson, 443 U.S. at 320.

 The judgment of the trial court is affirmed.

 

CHARLES F. BAIRD,

Assigned Justice



Do not publish.

Tex. R. App. P. 47.2(b).



Opinion delivered and filed

this 12th day of June, 2003.

1. Former Court of Criminal Appeals Judge Charles F. Baird assigned to this Court by the Chief
Justice of the Supreme Court of Texas pursuant to Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. The indictments are identical except for the names of the complainants. 

3. The charges are identical except for the names of the complainants.

4. Appellant was to incorporate "G" and issue shares of stock to represent Lucas's ownership
interest. However, "G" was never incorporated. 

5. In 2000, Lucas invested another $25,000 in "G." 

6. Magee later made additional contributions totaling $25,000 to "G" in an effort to make the
enterprise viable. 

7. The State reads appellant's brief as raising two additional arguments, namely a variance between
the indictment and proof of ownership and "Alleged Benefit from a Guarantee of Accounts
Receivables." We do not read appellant's brief as raising these as separate arguments, but rather they
are part and parcel of the same argument related to the substantial risk of loss element. Additionally,
there is no independent authority cited by appellant advancing these two issues. As noted above, the
authority cited by appellant is related to the substantial risk of loss element. Finally, the argument
that the conduct of appellant diverting the funds to "H" actually served to benefit "G" has no merit
because appellant's conduct still constituted a substantial risk of loss of the money invested by Magee
and Lucas.